[Cite as *Daniello v. Gray*, 2024-Ohio-641.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## GEAUGA COUNTY

THERESA DANIELLO
f.k.a. THERESA GRAY,

       Petitioner-Appellant/
       Cross-Appellee,

    - vs -

PATRICK K. GRAY,

       Petitioner-Appellee/
       Cross-Appellant.

CASE NO. 2023-G-0011

Civil Appeal from the
Court of Common Pleas

Trial Court No. 2015 DK 000266

## O P I N I O N

Decided: February 20, 2024
Judgment: Affirmed

*L. Ray Jones*, 215 West Washington Street, Medina, OH 44256 (For Petitioner-Appellant/Cross-Appellee).

*Scott S. Rosenthal* and *Alarra S. Jordan*, Rosenthal Lane, LLC, North Point Tower, 1001 Lakeside Avenue, Suite 1720, Cleveland, OH 44114 (For Petitioner-Appellee/Cross-Appellant).

JOHN J. EKLUND, J.

{¶1} This appeal follows the parties' dissolution of marriage in 2015 and concerns the child support that has followed. Both parties appeal the trial court's March 24, 2023 judgment entry modifying child support. For the following reasons, we affirm the judgment of the Geauga County Court of Common Pleas.

{¶2} On March 23, 2015, Theresa Daniello ("Mother") and Patrick Gray ("Father") signed a separation agreement which, among other things, allocated child support for

their two minor children. In that agreement, Father agreed to pay Mother $4,000.00 per month in child support ($2,000.00 per child). It also stated that Father "shall have the right to seek a modification of this amount if his income has decreased." The separation agreement stated that Father and Mother would have "shared parenting" of the children with time "spent evenly" but no more than one parent having the child for more than seven consecutive days.

{¶3} In May 2015, the trial court dissolved Mother and Father's marriage. In that entry, the trial court incorporated the separation agreement "as if fully rewritten." The judgment entry of dissolution states that child support would continue until the children reached age 18 or so long as the children continuously attend an accredited and recognized high school.

{¶4} On April 21, 2021, Father moved the trial court to "terminate and/or modify child support." In his motion, Father explained that Mother had "kicked both" children out of her residence on April 13, 2021, and directed them to live with him. At least one of the children had not spent a night at Mother's residence since moving in with Father. Without the court's ruling on the motion, Father stopped paying child support.

{¶5} The elder of the two children graduated from high school on May 25, 2021, which ended Father's child support obligation for the child. The younger child graduated from high school on May 24, 2022. Father's obligation to pay any child support ended then.

{¶6} In August 2021, the parties each filed affidavits of basic income and expenses for the purpose of child support calculation. Mother listed her total yearly income as $24,000.00.

Case No. 2023-G-0011

{¶7} On January 10, 2023, the magistrate issued its decision on Father's motion and recommended to the court that he retroactively pay child support of $1,500.00 per month. The magistrate justified not terminating child support explaining that Mother did not know if or when the children would return to her residence and needed child support to "maintain adequate housing." Both parties objected to the magistrate's decision.

{¶8} The magistrate issued an amended decision only to address guardian ad litem fees. Father objected to the amended decision. He asserted that, procedurally, the magistrate was not permitted to issue an amended decision after the parties filed objections. Father did not object to the substance of addressing guardian ad litem fees.

{¶9} On March 24, 2023, the court adopted the magistrate's decision and denied the objections. The court modified child support from $4,000.00 to $2,000.00 for May 1 through May 24, 2021, and to $1,500.00 thereafter until May 24, 2022. The court attached its child support calculation worksheet as an exhibit to the judgment entry. The worksheet listed Mother's annual gross income as $24,000.00. The court also provided in its judgment entry that Father shall pay Mother "by traceable means in care of her attorney * * * If not paid timely within 30 days, [Mother] shall be entitled to recover this principal sum plus statutory judgment interest * * *."

{¶10} Mother timely appealed raising three assignments of error. Father cross-appealed raising two assignments of error.

{¶11} In Mother's first assignment of error, she asserts that the trial court erred in modifying child support. She argues that Father could not seek to modify child support because the parties agreed in the separation agreement that Father may seek modification of child support *if* his income decreased, and his income had not decreased.

3

**{¶12}** A trial court possesses broad discretion in its determination regarding a modification of child support obligations. *Pauly v. Pauly*, 80 Ohio St.3d 386, 390, 686 N.E.2d 1108 (1997), citing *Booth v. Booth*, 44 Ohio St.3d 142, 144, 541 N.E.2d 1028 (1989). Accordingly, an appellate court will not disturb such determinations absent an abuse of discretion. *Id.*

**{¶13}** An abuse of discretion is the trial court's "'failure to exercise sound, reasonable, and legal decision-making.'" *State v. Beechler*, 2d Dist. Clark No. 09-CA-54, 2010-Ohio-1900, ¶ 62, quoting Black's Law Dictionary 11 (8th Ed.Rev.2004). Where the issue on review has been confided to the discretion of the trial court, the mere fact that the reviewing court would have reached a different result is not enough, without more, to find error. *Id.* at ¶ 67. When a pure issue of law is involved in appellate review, however, the mere fact that the reviewing court would decide the issue differently is enough to find error. *Id.*

**{¶14}** As noted above, a trial court has broad discretion to modify child support. R.C. 3119.79 permits a court to modify child support if there is a substantial change in circumstances not contemplated when the court issued the original child support order.

**{¶15}** Yet, "a domestic relations court has the authority to give effect to the parties' agreement entered into during the proceedings by incorporating their agreement into the decree, even if the court otherwise would not have the power to make such decree on its own." *Piliero v. Piliero*, 10th Dist. Franklin No. 10AP-1142, 2012-Ohio-1153, ¶ 26. "Thus, where the parties reach an agreement during the proceedings, the domestic relations court may incorporate the agreement into the decree and give the agreement the force of

4

law." *Id.* This is clearly what the court below did in its May 2015 journal entry of dissolution.

{¶16} Mother argues that under the parties' separation agreement (and the court's journal entry of dissolution) Father could only seek to modify child support if his salary decreased. Because he sought to modify child support for other reasons, Mother contends that the court was not permitted to modify it. Mother's conclusion is incorrect. The separation agreement's plain language does not foreclose Father from asserting other grounds for modifying, nor does it constrain the court's broad discretion to modify, child support. It states that Father had the right to seek to modify child support if his salary decreases. Yet, it does not limit Father's reasons for modifying child support to only one factor. There is no reason to believe that the parties contemplated when they signed the separation agreement that Mother would have directed both children to leave her residence 6 years later and that they would be living exclusively with Father. Because the separation agreement does not limit Father's reasons for seeking modification of child support to only one factor, the trial court retained its broad discretion to modify it.

{¶17} Mother's first assignment of error is without merit.

{¶18} In Mother's second assignment of error, she asserts that the trial court erred when it calculated her annual income on the child support calculation worksheet. She argues that the court incorrectly listed her annual income as $24,000.00 when her actual income was zero.

{¶19} In making its ultimate decision in child support matters, the trial court possesses considerable discretion. The decision of the trial court will be reversed only if

5

it is an abuse of that discretion. *Pauly v. Pauly*, 80 Ohio St.3d 386, 390, 686 N.E.2d 1108 (1997).

{¶20} The determination of gross income is a factual finding, which is reviewed using the "some competent, credible evidence" standard. *Thomas v. Thomas*, 6th Dist. Lucas No. L-03-1267, 2004-Ohio-1034, ¶ 13.

{¶21} Mother's assertion that the court erred in calculating her annual income as $24,000.00 is wholly without merit. While we could reasonably infer that the court calculated Mother's income as the child support she had been owed, we do not need to render such a decision. Mother herself filed a sworn affidavit in August 2021 and listed her total yearly income as $24,000.00. Mother's own affidavit meets the "some competent, credible evidence" standard for the court to calculate her annual income. It is at her own peril that she now appeals asserting that $24,000.00 was not her annual income.

{¶22} Mother's second assignment of error is without merit.

{¶23} In Mother's third assignment of error, she contends that the child support order should remain within the lower court's jurisdiction "to enforce contempt, not judgment collection." She also argues that, procedurally, Father is required to make child support payments through the Child Support Enforcement Agency ("CSEA") – not through Mother's attorney.

{¶24} We first address Mother's argument that the trial court erred by "abrogating" her remedy of initiating a contempt action if Father fails to pay child support.

6

**{¶25}** R.C. 2705.031(B)(1) provides: "Any party who has a legal claim to any support ordered for a child, spouse, or former spouse may initiate a contempt action for failure to pay the support."

**{¶26}** The court's judgment entry stated "* * * If not paid timely within 30 days, [Mother] shall be entitled to recover this principal sum plus statutory judgment interest * * *." It did not foreclose her the right to initiate a contempt action for failure to pay child support as provided under R.C. 2705.031(B)(1). Mother therefore still retains the right to initiate a contempt action if Father does not pay it.

**{¶27}** We next address Mother's assertion that child support must be paid through the CSEA and not through her attorney.

**{¶28}** R.C. 3121.43 provides: "Except as provided in sections 3125.27 to 3125.30 of the Revised Code, the office of child support in the department of job and family services shall be the sole agency of the state responsible for the collection of all support payments due under support orders and the disbursement of the payments to obligees."

**{¶29}** R.C. 3121.46 further provides, in relevant part: "When a support order is issued or modified * * * the court may order the office of child support, or the child support enforcement agency may issue an order requiring the office, to transmit the payments or make them payable to any third person that is either agreed upon by the parties and approved by the court or appointed by the court, with respect to a support order * * *."

**{¶30}** The court's judgment entry does not order that Father pay Mother through her attorney instead of paying through the CSEA. The entry states only that Father shall pay Mother "by traceable means in care of her attorney * * *." The court was silent as to the "traceable means" through which the payments shall be made. However, "[a]

7

reviewing court presumes regularity when the record is silent on a particular matter." *State v. Marcus*, Cuyahoga App. No. 79768, 2002 Ohio App. LEXIS 922 at 2-3, fn. 1 (Mar. 7, 2002), citing *State v. Johnson*, 107 Ohio App.3d 723, 669 N.E.2d 483 (8th Dist. 1995). Because the court's entry was silent as to the means through which payments shall be made, we must presume that payments shall be made through the office of child support in accordance with R.C. 3121.43.

{¶31} We also note that R.C. 3121.46 is disjunctive. It allows for child support payments to be paid to a third party if the parties agree and the court approves *or* if the court appoints a third party. In accordance with R.C. 3121.46, the trial court appointed Mother's attorney as a third party to whom child support payments shall be transmitted through "traceable means."

{¶32} Mother's third assignment of error is without merit.

{¶33} Father's first assignment of error on cross-appeal states:

{¶34} "The trial court erred and abused its discretion when it failed to retroactively terminate Appellee's child support obligation."

{¶35} A trial court's decision regarding child support will not be reversed by a reviewing court unless it is shown that the trial court abused its discretion. *Pauly v. Pauly*, 80 Ohio St.3d 386, 390, 685 N.E.2d 507 (1997), citing *Booth v. Booth*, 44 Ohio St.3d 142, 144, 541 N.E.2d 1028 (1989).

{¶36} It is well-established that the purpose of the child support system is to protect children and their best interests. *Mannerino v. Mannerino*, 12th Dist. Butler No. CA2010-08-210, 2012-Ohio-1592, ¶ 9.

8

{¶37} R.C. 3119.79 provides: "If the court determines that the amount of child support required to be paid under the child support order should be changed due to a substantial change of circumstances that was not contemplated at the time of the issuance of the original child support order or the last modification of the child support order, the court shall modify the amount of child support required to be paid * * *."

{¶38} R.C. 3119.22 further provides:

> The court may order an amount of child support that deviates from the amount of child support that would otherwise result from the use of the basic child support schedule and the applicable worksheet if, after considering the factors and criteria set forth in section 3119.23 of the Revised Code, the court determines that the amount calculated pursuant to the basic child support schedule and the applicable worksheet would be unjust or inappropriate and therefore not be in the best interest of the child.

{¶39} R.C. 3119.23 provides a list of non-exhaustive factors for a court to consider when modifying child support. Two factors relevant to this appeal are whether one parent has extended parenting time and to consider the standard of living the children would have enjoyed had the marriage continued.

{¶40} Father asserts that there was a substantial change in circumstances not contemplated when the court issued the original child support order. He specifically asserts that the court should have terminated child support instead of modifying it because neither child lived with Mother and both were in his exclusive care.

{¶41} Did the trial court abuse its discretion when it modified, but did not terminate, child support? First, the record is clear; after April 2021, the children did not reside with, and rarely visited, Mother on her orders. Father housed and provided for both children.

9

**{¶42}** The trial court reasoned that Mother needed child support to maintain her home in the event the children returned home. But, by the time the court issued its March 24, 2023 judgment entry, both children had already reached the age of majority and graduated from high school and neither child had spent significant time with Mother after they moved in with Father in April 2021. One might say that continuing a child support obligation retroactively to a time period in which the obligee provided no support to the children is, well, incongruous. Still, the trial court relied on the factor under R.C. 3119.23 that Mother needed child support to provide a standard of living for the children that they would have enjoyed had the marriage continued and Mother and children had reunited. Ultimately, there was no reunification. But, that does not, in retrospect, vitiate the need the trial court sought to fill using a statutory standard and that includes providing for contingencies that may not (or did not) arise. We stress that the purpose of child support is to protect children and their best interests. The trial court did not abuse its discretion when it applied statutory criteria to continue child support retroactively to a time when the children may have needed their Mother's support.

**{¶43}** Father's first assignment of error does not have merit.

**{¶44}** Father's second assignment of error: "The trial court erred in permitting the magistrate to issue an amended magistrate's decision."

**{¶45}** Father asserts that it was procedurally improper for the magistrate to issue an amended decision after objections had been made and before the court ruled on the magistrate's decision and objections.

**{¶46}** Civ.R. 53 provides the rules and procedures concerning magistrates. Nowhere in the rule does it prohibit a magistrate from amending its decision after the

parties file objections. Civ.R. 53(D)(4)(d) requires a court to rule on objections, but it does not state that a magistrate cannot amend its decision. Furthermore, the court allowed both parties to refile objections after it amended its decision. Any error would therefore be harmless.

{¶47} Father's second assignment of error is without merit.

{¶48} The judgment of the Geauga County Court of Common Pleas is affirmed.

MATT LYNCH, J.,

ROBERT J. PATTON, J.,

concur.

11